United States District Court
Southern District of Texas
**ENTERED**
March 05, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIC CLAPP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-24-3550 |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Eric Clapp ("Plaintiff") filed this action in the 164th Judicial District Court of Harris County, Texas, against Halliburton Energy Services, Inc. ("Defendant").[1] Plaintiff alleges a Jones Act negligence claim and a claim for failure to pay maintenance and cure.[2] Pending before the court is Plaintiff's Motion to Remand and Supporting Brief (Docket Entry No. 9). For the reasons set forth below, Plaintiff's Motion to Remand will be granted.

---

[1]Plaintiff's Original Petition ("Petition"), Exhibit A-2 to Notice of Removal, Docket Entry No. 1-4; Notice of Removal, Docket Entry No. 1, p. 1 ¶ 1. All page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[2]Petition, Exhibit A-2 to Notice of Removal, Docket Entry No. 1-4, pp. 4-6. References to Plaintiff's Jones Act negligence claim include his gross negligence allegations.

## I.  **Background**

Plaintiff filed this action on August 26, 2024, in the 164th Judicial District Court of Harris County, Texas.[3]  Plaintiff alleges that he was injured during his employment for Defendant aboard a drillship, the Noble Globetrotter II when Hurricane Ida struck the drillship.[4]

Defendant removed the action to this court on September 20, 2024.[5]  Plaintiff's Motion to Remand was filed on October 18, 2024, Defendant responded, and Plantiff replied.[6]

Defendant argues that the court has subject matter jurisdiction over Plaintiff's claims under the Outer Continental Shelf Lands Act ("OCSLA") and that Plaintiff has fraudulently pleaded Jones Act seaman status.[7]  Defendant argues that if the court does not find that Plaintiff fraudulently pleaded Jones Act seaman status, Plaintiff's Jones Act claim should be severed and remanded and that the court should retain Plaintiff's claim for

---

[3]Notice of Removal, Docket Entry No. 1, p. 1 ¶ 1.

[4]Petition, Exhibit A-2 to Notice of Removal, Docket Entry No. 1-4, pp. 3-4 ¶¶ 9, 13, 14.

[5]Notice of Removal, Docket Entry No. 1.

[6]Plaintiff's Motion to Remand, Docket Entry No. 9; Defendant's Opposition to Plaintiff's Motion to Remand ("Defendant's Response"), Docket Entry No. 12; Plaintiff's Reply in Support of His Motion to Remand, Docket Entry No. 15.  Plaintiff filed a Supplement to Plaintiff's Motion to Remand Based on New Evidence (Docket Entry No. 20), which the court need not consider to resolve Plaintiff's Motion to Remand.

[7]Defendant's Response, Docket Entry No. 12, p. 9 § II.

maintenance and cure.[8]  Plaintiff argues that the court lacks subject matter jurisdiction because (1) he alleges a single Jones Act claim that is made nonremovable by statute, and (2) OCSLA jurisdiction does not apply.[9]  Plaintiff argues that his single Jones Act claim is not severable and that the action must be remanded in whole.[10]

## II. <u>Subject Matter Jurisdiction</u>

**A.  Removal**

Under 28 U.S.C. § 1441(a),[11] a defendant may remove a state court civil action to federal district court if the court has original subject matter jurisdiction.  <u>See Gasch v. Hartford Accident & Indemnity Co.,</u> 491 F.3d 278, 281 (5th Cir. 2007).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "Lack of subject matter jurisdiction may be found in any one of three instances:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts

---

[8]<u>Id.</u>

[9]Plaintiff's Motion to Remand, Docket Entry No. 9, p. 8.

[10]<u>Id.</u>

[11]Title 28 U.S.C. § 1441(a) states:  "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

## B.    The Outer Continental Shelf Lands Act

Under OCSLA federal courts have subject matter jurisdiction over "cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf ["OCS"] which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf[.]" 43 U.S.C. § 1349(b)(1). "Courts typically assess jurisdiction under this provision in terms of whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." In re Deepwater Horizon, 745 F.3d 157, 163 (5th Cir. 2014). With respect to the second prong, the Fifth Circuit "deems § 1349 to require only a 'but-for' connection" between a mineral operation and the alleged injury. Id.

## C.    Jones Act Claims

Title 46 U.S.C. § 30104 states that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." Such a claim "may not be removed to any district court of the United States." 28 U.S.C. § 1445(a); 46 U.S.C. § 30104(a); see

also Santee v. Oceaneering International, Inc., 110 F.4th 800, 805 (5th Cir. 2024) ("[C]laims [under § 30104] filed in state court generally are 'not subject to removal to federal court.'").

"A Jones Act claim also requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection[.]" Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 452 (5th Cir. 1980). "The employer need not be the owner of the vessel, and independent contractors may be liable under the Act." Volyrakis v. M/V Isabelle, 668 F.2d 863, 865 (5th Cir. 1982) (internal citation omitted), overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 821 F.2d 1147 (5th Cir. 1987).

A plaintiff is a Jones Act seaman if (1) the "'employee's duties [] contribute to the function of the vessel or to the accomplishment of its mission'" and (2) the employee has "'a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.'" Harbor Tug and Barge Co. v. Papai, 117 S. Ct. 1535, 1540 (1997) (quoting Chandris, Inc. v. Latsis, 115 S. Ct. 2172, 2190 (1995)).

The first prong "is very broad: 'All who work at sea in the service of a ship' are eligible for seaman status." Chandris, 115 S. Ct. at 2190 (quoting McDermott International, Inc. v. Wilander, 111 S. Ct. 807, 817 (1991).

-5-

The second prong includes two requirements — that the plaintiff's connection to the vessel must be substantial in duration <u>and</u> in nature. <u>See Papai</u>, 117 S. Ct. at 1540. With respect to the substantial duration element, courts apply "an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." <u>Chandris</u>, 115 S. Ct. at 2191; <u>see also Sanchez v. Smart Fabricators of Texas, L.L.C.</u>, 997 F.3d 564, 574 (5th Cir. 2021) ("[G]enerally if a worker spends at least 30 percent of his time aboard a vessel or a fleet of vessels, then he establishes the duration prong.").

For the substantial-in-nature element, the Fifth Circuit identified four factors that guide the analysis: (1) whether the plaintiff is subject to "'the perils of the sea'" in his job, (2) whether the plaintiff "owe[s] his allegiance to the vessel, rather than simply to a shoreside employer[,]" (3) whether the plaintiff's "work [is] sea-based or involve[s] seagoing activity[,]" and (4) whether the plaintiff's "assignment to a vessel [is] limited to performance of a discrete task after which the worker's connection to the vessel ends, or [instead whether the plaintiff's] assignment includes sailing with the vessel from port to port or location to location[.]" <u>Sanchez</u>, 997 F.3d at 573-74.

"[D]efendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal[.]"

Lackey v. Atlantic Richfield Co., 990 F.2d 202, 207 (5th Cir.
1993). "As in fraudulent joinder cases, defendants' burden of
persuasion is a heavy one." Id. The Fifth Circuit has "recognized
the district court's authority to use a summary judgment-like
procedure for disposing of fraudulent pleading claims." Burchett
v. Cargill, Inc., 48 F.3d 173, 176 (5th Cir. 1995). "'The court
may deny remand where, but only where, resolving all disputed facts
and ambiguities in current substantive law in plaintiff's favor,
the court determines that the plaintiff has no possibility of
establishing a Jones Act claim on the merits.'" Holmes v. Atlantic
Sounding Co., Inc., 437 F.3d 441, 445 (5th Cir. 2006), abrogated on
other grounds by Lozman v. City of Riviera Beach, Florida, 133
S. Ct. 735 (2013).

### III.  **Analysis**

**A.    Whether OCSLA Jurisdiction Applies**

    Defendant argues that OCSLA jurisdiction applies because
(1) the Noble Globetrotter II engaged in an operation on the OCS
involving the extraction of minerals and (2) Plaintiff's alleged
injuries would not have occurred but for the operation. Plaintiff
argues that OCSLA jurisdiction includes a "situs" requirement, that
the Noble Globetrotter II's involvement in the operation ceased
prior to the injury, and that Defendant must show a "substantial
nexus" between the operation and alleged injury — not merely but-
for causation.[12]

---

[12]Plaintiff's Motion to Remand, Docket Entry No. 9, pp. 17-18.

Defendant's uncontradicted evidence shows that in August of 2021, Shell Offshore, Inc. ("Shell") was engaged in the exploration, development, and production of oil and gas from the Princess P-12 well in the OCS, that Defendant contracted to provide cementing services to Shell for completion of the Princess P-12 well, that Defendant's cementing services were provided on a cement unit affixed to the Noble Globetrotter II, and that Plaintiff worked on the Noble Globetrotter II to provide these cementing services.[13] Plaintiff disputes none of this but argues that because the Noble Globetrotter II had unlatched to try to avoid Hurricane Ida, the ship was not engaged in a mineral extraction operation at the time Plaintiff was injured.[14]

Although an "operation" is not defined in the statute, the Fifth Circuit has interpreted it to mean "doing of some physical act" on the OCS. Amoco Production Co. v. Sea Robin Pipeline Co., 844 F.2d 1202, 1207 (5th Cir. 1988). The Fifth Circuit elaborated in EP Operating Limitetd Partnership v. Placid Oil Co., stating that "operation" should be read to include "the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and maintenance of facilities to produce those resources." EP Operating Limited Partnership v.

---

[13]Declaration of Troy Sonnier ("Sonnier Decl."), Exhibit 1 to Defendant's Response, Docket Entry No. 12-1, p. 2 ¶¶ 6-8; Declaration of Justin Denais ("Denais Decl."), Exhibit 2 to Defendant's Response, Docket Entry No. 12-2, p. 1 ¶ 4, p. 2 ¶ 7.

[14]Plaintiff's Motion to Remand, Docket Entry No. 9, p. 17.

Placid Oil Co., 26 F.3d 563, 568 (5th Cir. 1994).  Shell's extraction from the Princess P-12 well (and Defendant's cementing services provided via the Noble Globetrotter II) are "physical acts" done on the OCS and easily fall within "the full range of oil and gas activity" contemplated by EP Operating.  Defendant has therefore shown the existence of an "operation conducted on the [OCS] which involves exploration, development, or production of the minerals . . . of the outer Continental Shelf[.]"  43 U.S.C. § 1349(b)(1).

The only other requirement is a but-for connection between the operation and Plaintiff's alleged injuries.  In Tennessee Gas Pipeline v. Houston Casualty Insurance Co., 87 F.3d 150, 152 (5th Cir. 1996), "[a]n ocean-going vessel, in the tow of a tug whose helmsman was reading a novel, [collided] with a [mineral extraction] platform secured to the outer continental shelf[.]"  The platform owner sued the tugboat's insurer in state court, and the insurer removed on the basis of OCSLA subject matter jurisdiction.  Id.  The platform owner argued that OCSLA did not apply because its injuries arose from a navigational error — not from a mineral operation.  Id. at 155.  The Fifth Circuit held that because the navigational error would not have occurred but for the mineral operation, OCSLA jurisdiction applied.  Id.

The but-for causation requirement is satisfied in this case.  Similar to Tennessee Gas Pipeline, a force unrelated to Defendant's mineral operation — Hurricane Ida — physically injured Plaintiff.

-9-

However, Plaintiff would not have been on the Noble Globetrotter II in Hurricane Ida's path but for Defendant's operation on the OCS. Plaintiff's alleged injuries therefore "ar[ose] out of, or in connection with" a mineral extraction operation. 43 U.S.C. § 1349(b)(1).

Plaintiff argues that OCSLA jurisdiction depends on a situs requirement that is not satisfied here because the ship was not connected to the OCS at the time of Plaintiff's injuries. Subject matter jurisdiction is just one of multiple matters that OCSLA addresses regarding the OCS. Other provisions, 43 U.S.C. §§ 1333(a)(1), 1333(a)(2)(A), regulate what substantive law applies to the OCS (and therefore what law governs various disputes arising on the OCS). Courts turn to these provisions "to ascertain whether state, federal, or maritime law applies to a particular [OCS] case." Deepwater Horizon, 745 F.3d at 164. In that analysis it is relevant whether the controversy "ar[o]se on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto)." Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778, 783 (5th Cir. 2009); see also 43 U.S.C. § 1333(a)(1)(A). A few courts have imported this situs requirement into their analysis of subject matter jurisdiction, but the Fifth Circuit has made clear that the two analyses should not be conflated and that OCSLA subject matter jurisdiction does not include a situs requirement. United States v. Kaluza, 780 F.3d 647, 655 (5th Cir. 2015) ("[T]he issue of

-10-

whether the rig was an OCSLA situs does not implicate subject matter jurisdiction. . . . We have held that this subject matter jurisdiction inquiry should not be conflated with the choice-of-law inquiry."); Deepwater Horizon, 745 F.3d at 164 (plaintiffs' "attempt to intertwine the Section 1349 jurisdictional inquiry with OCSLA's choice of law provision, 43 U.S.C. § 1333, fails because the provisions and the issues they raise are distinct. . . . Because federal jurisdiction exists for cases 'arising out of, or in connection with' OCS operations, 43 U.S.C. § 1349, the statute precludes an artificial limit based on situs[.]"). It therefore does not matter that the Noble Globetrotter II was not physically attached to the OCS at the time of Plaintiff's injuries.

Plaintiff also argues that the Noble Globetrotter II had ceased operations when Plaintiff was injured. But as the court explained above, OCSLA subject matter jurisdiction covers claims "arising out of, or in connection with" a mineral operation — not just those that arose during a mineral operation. 43 U.S.C. § 1349(b)(1); Placid Oil Co., 26 F.3d at 568 ("Production from oil and gas facilities can be interrupted and there can be a hiatus in activity for any number of reasons. Such temporary lulls in activity should not control jurisdiction in federal court.").

Plaintiff argues that some courts have required something more than but-for causation, such as a substantial nexus, for OCSLA subject matter jurisdiction to apply. In Pacific Operators Offshore, LLP v. Valladolid, 132 S. Ct. 680, 690 (2012), the

-11-

Supreme Court analyzed the scope of 43 U.S.C. § 1333(b), which states that compensation is available under the federal Longshore and Harbor Workers' Compensation Act ("LHWCA") for "'disability or death of an employee resulting from any injury occurring as the result of [mineral] operations conducted on the outer Continental Shelf[.]'" The Court held that § 1333(b) requires a "substantial nexus" between an OCS mineral operation and the employee's injury for the LHWCA to apply. Id. at 691.

Section 1333(b) addresses a different question (applicability of substantive law) and uses different causation language than § 1349(b)(1).[15] Moreover, since Pacific Operators the Fifth Circuit has continued to state that subject matter jurisdiction under § 1349(b)(1) requires only a but-for connection between a mineral operation and a claim. Deepwater Horizon, 745 F.3d at 163.[16]

Because the relevant activities, i.e. Shell's completion of the Princess P-12 well and Defendant's accompanying cementing services, are "operation[s] conducted on the [OCS] which involve

_____

[15]Compare 43 U.S.C. § 1333(b) (". . . any injury occurring as the result of operations conducted on the outer Continental Shelf . . .") with 43 U.S.C. § 1349(b)(1) ("[T]he district courts . . . shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf . . .") (emphasis added).

[16]Even if a substantial nexus causation standard were to apply, it would be met under Plaintiff's allegations. Plaintiff alleges that Defendant failed to timely evacuate him and that the Noble Globetrotter II failed to unlatch until it was too late to avoid Hurricane Ida. Petition, Exhibit A-2 to Notice of Removal, Docket Entry No. 1-4, pp. 3-4 ¶¶ 13-14. The decisions of whether and when to evacuate crew and when to unlatch due to severe weather are part of the mineral operation.

[mineral] exploration, development, or production," and because Plaintiff's claims "ar[ose] out of, or in connection with" those mineral operations, OCSLA grants the court subject matter jurisdiction over this action.   43 U.S.C. § 1349(b)(1).

**B.   Whether Plaintiff is a Jones Act Seaman**

Defendant argues that Plaintiff fraudulently pleaded a Jones Act claim.[17]   In particular, Defendant argues that Plaintiff did not have a connection to the Noble Globetrotter II that was substantial in duration or nature.[18]

1.   <u>Substantial in Duration</u>

The parties present contradictory evidence regarding the duration of Plaintiff's connection to the Noble Globetrotter II. Plaintiff's Decl. states:

> 2.   I started working for Halliburton Energy Services Inc., in 2017.   I was permanently assigned to the *Noble Globetrotter II* as a service supervisor in early 2019.   On August 29, 2021, the date of my injuries, I had been working for Halliburton for more than three years.   I was assigned to the *Noble*

_____

[17]Defendant's Response, Docket Entry No. 12, p. 23.

[18]The first prong of the Jones Act seaman test — that Plaintiff's duties contributed to the function of the vessel or to the accomplishment of its mission — appears to be undisputed. Moreover, Defendant's evidence shows that Plaintiff maintained its cementing equipment and prepared cement for pouring, Declaration of Eric Clapp ("Plaintiff's Decl."), Exhibit 2 to Plaintiff's Motion to Remand, Docket Entry No. 9-2, p. 2 ¶ 3, which contributed to the Noble Globetrotter II's mission of completion of the Princess P-12 well.   Sonner Decl., Exhibit 1 to Defendant's Response, Docket Entry No. 12-1, p. 2 ¶¶ 7-8.   This easily falls within the "very broad" category of "[a]ll [those] who work at sea in the service of a ship[.]"   <u>Chandris,</u> 115 S. Ct. at 2190.

> *Globetrotter II* for the entirety of that time with
> no end date for my assignment.

3.   In my work for Halliburton, I spent at least 99% of
     my time on the *Noble Globetrotter II*. . . .[19]

Defendant's Response attaches a record titled "Eric Clapp
Assignment History."[20]  Plaintiff's Assignment History indicates
that Plaintiff served stints on various boats or rigs for Defendant
from June of 2014 through September of 2021.[21]  That tenure included
a few vessels to which Plaintiff was assigned for a week or less,
but most of his assignments were for several consecutive months.[22]
Out of the last 23 months shown, only one assignment (lasting just
over a week) was on a ship other than the Noble Globetrotter II.[23]
Based on the Assignment History, Defendant calculates that 26.8% of
Plaintiff's time working for Defendant was spent on the Noble
Globetrotter II.[24]

Plaintiff has offered evidence that he spent substantially
more than 30% of his work time on the Noble Globetrotter II; and
the court, employing "a summary judgment-like procedure," resolves
factual disputes in Plaintiff's favor.  Burchett, 48 F.3d at 176.

---

[19]Plaintiff's Decl., Exhibit 2 to Plaintiff's Motion to Remand,
Docket Entry No. 9-2, p. 2.

[20]Eric Clapp Assignment History ("Assignment History"),
Exhibit D to Denais Decl., Exhibit 2 to Defendant's Response,
Docket Entry No. 13-7.

[21]Id. at 4-5.

[22]Id.

[23]Id. at 5.

[24]Defendant's Response, Docket Entry No. 12, p. 13.

-14-

Plaintiff has, at this stage, shown that he satisfies the substantial-in-duration element of being a Jones Act seaman.

2.   Substantial in Nature

To determine whether Plaintiff had a connection to the Noble Globetrotter II that was substantial in nature, the court weighs the four factors stated in Sanchez, 997 F.3d at 573-74.

a.   Whether Plaintiff Was Subject to the Perils of the Sea

Plaintiff presents evidence that he was subject to the perils of the sea in his work.  Plaintiff's Decl. states that he spent over 99% of his work time aboard the ship and that he sailed with it wherever it went.  Moreover, this work was located in the Gulf of Mexico, not "a calm river or bay" or "a quiet canal."  See Sanchez, 997 F.3d at 574.

b.   Plaintiff's Allegiance

Plaintiff was employed by Defendant — not the vessel's owner. But paragraph 5 of Plaintiff's Decl. states:

> In order to work on the *Noble Globetrotter II*, I had to be authorized and assigned by the Captain.  I was required to follow orders from the Captain and other senior members of the crew.  The Halliburton lead supervisor on the vessel took orders from the Captain and worked in conjunction with the Captain to operate the vessel.  As a service supervisor, I fit into the hierarchy of the vessel, worked as part of the crew, and was subject to the chain of command on the vessel.[25]

---

[25]Plaintiff's Decl., Exhibit 2 to Plaintiff's Motion to Remand, Docket Entry No. 9-2, p. 3 ¶ 5.

-15-

"[A] maritime worker may possess allegiance to both a vessel on which he has had longstanding employment <u>and</u> his shoreside employer." <u>Santee v. Oceaneering International, Inc.</u>, 110 F.4th 800, 807 (5th Cir. 2024) (emphasis in original). Evaluating an affidavit similar to Plaintiff's, the Fifth Circuit in <u>Santee</u> concluded that the plaintiff's evidence supported his allegation that he owed dual allegiance to his employer and to the vessel. <u>Id.</u> The court emphasized that the plaintiff "spent over 96% of his employment time in the last five years with [his employer] (specifically assigned to [a ship owned and operated by a third party]), reported to [the customer's] project leader, and took orders from both [the customer] and the captain of the vessel." <u>Id.</u> The Fifth Circuit reversed the district court's ruling that the plaintiff had fraudulently pleaded Jones Act seaman status.

Like the <u>Santee</u> plaintiff, Plaintiff spent most of his work time for an extended period on the Noble Globetrotter II and was subject to the orders of the vessel's captain. Plaintiff has presented evidence that he "owe[d his] allegiance to a vessel and not solely to a land-based employer[.]" <u>Wilander</u>, 111 S. Ct. at 813.

c.   Whether Plaintiff's Work Was Sea-Based

Defendant argues that Plaintiff's work, cementing, was not sea-based because it was not "'inherently maritime[.]'"[26] The cases

---

[26]Defendant's Response, Docket Entry No. 12, p. 30 (quoting <u>Roberts v. Cardinal Services, Inc.</u>, 266 F.3d 368. 378 (5th Cir. 2001)).

analyzing whether a plaintiff's work is sea-based focus on whether the work was done at sea. E.g., Phillips v. Javeler Marine Services, LLC, 736 F. Supp. 3d 408, 419 (M.D. La. 2024) ("[T]he Court considers whether Plaintiff's work was sea-based or involved seagoing activity. In essence, this involves whether the worker's duties 'take him to sea.'").  Plaintiff's cited authority discussing whether work is "'inherently maritime'" does not relate to this factor.[27]

Defendant argues that some of Plaintiff's work was done on drilling rigs or on land but does not provide a percentage. Because Plaintiff's Decl. states that he spent over 99% of his work time aboard the Noble Globetrotter II, he has supported his allegation that his work was sea-based.

> d.   Whether Plaintiff's Assignment Was Limited to a
>      Discrete Task or Instead Included Sailing With the
>      Vessel

Plaintiff's Decl. states that he "worked, slept, and ate aboard the vessel for days at a time during my hitches.  I embarked on a dock and returned to a dock when my hitch ended.  I sailed with the vessel where it went."[28]  The Denais Decl. states that Plaintiff "did not sail from port to port with the Noble

---

[27]The caselaw asking whether work is inherently maritime relates to the substantial-in-duration requirement. See Roberts, 266 F.3d at 377-78.  In particular it relates to an exception to the general rule that a Jones Act seaman must spend at least 30% of his work time aboard the vessel.  Id.  The court is not aware of any opinions importing this analysis into the substantial-in-nature factors.

[28]Plaintiff's Decl., Exhibit 2 to Plaintiff's Motion to Remand, Docket Entry No. 9-2, p. 2 ¶ 3.

Globetrotter II. For each hitch, he traveled to and from the Noble Globetrotter II via a different vessel or helicopter provided by the customer."[29] The Assignment History shows that Plaintiff worked for several days or several weeks at a time on the ship and was then off for a period (also lasting days or weeks) before returning.[30]

Reconciling this evidence, it appears that Plaintiff worked hitches on the ship lasting days or weeks and would sail with the ship when it moved during his hitches but would leave the ship in between his hitches. The court understands the Denais Decl. to mean that Plaintiff was not aboard the ship long enough to make full "port to port" journeys. But this factor is not so narrowly focused. The factor seeks to distinguish workers "assigned to [] short-term, transitory task[s]" from those with more permanent or open-ended connections to a vessel. See Santee, 110 F.4th at 807. The Sonnier Decl. and Plaintiff's lengthy tenure with the ship show that cementing is a necessary, long-term component of the ship's oil and gas operations.[31]    Plaintiff's Decl. states that his

_____

[29]Denais Decl., Exhibit 2 to Defendant's Response, Docket Entry No. 12-2, p. 3 ¶ 18.

[30]Assignment History, Exhibit D to Denais Decl., Exhibit 2 to Defendant's Response, Docket Entry No. 13-7, p. 5.

[31]Sonnier states that cementing "includes the cementing pipe in place during the drilling phase of the project, the testing and monitoring of pressure as fluids are pumped out of and into the well during the drilling and completions phase of the project, and pumping of weighted fluid into the pipe as a slug during the (continued...)

-18-

assignment to the ship had no end date at the time of his injury.[32]
Even if Plaintiff did not sail "port to port," his connection to
the vessel was not limited to a "discrete task" and was lasting
enough that he sailed with it "from location to location[.]"  See
Sanchez, 997 F.3d at 574.

     e.   Weighing the Sanchez Factors

Plaintiff has presented evidence that his work aboard the
Noble Globetrotter II subjected him to the perils of the sea, that
he owed his allegiance in part to the vessel, that his work was
sea-based, and that his assignment was not limited to a discrete
task but instead included sailing with the vessel.   Although
Defendant presents contrary evidence on some of these elements, the
court, for purposes of resolving a claim of fraudulent pleading,
resolves factual disputes in Plaintiff's favor.   The court
therefore concludes that Plaintiff had a connection to the Noble
Globetrotter II that was substantial in nature.

Because Plaintiff's duties "contribute[d] to . . . the
accomplishment of [the vessel's] mission'" because he had

---

[31](...continued)
drilling and completion phase of the project. The cementing
processes are commonly used in the exploration, development,
completion and production, of oil, gas, and other minerals."
Sonnier Decl., Exhibit 1 to Defendant's Response, Docket Entry
No. 12-1, p. 2 ¶ 11.  Moreover, the Noble Globetrotter II had a
cementing unit "affixed" to the ship.  Id. ¶ 8.  Nothing in
Defendant's evidence suggests that the ship's need for cementing
equipment and personnel was temporary or sporadic.

[32]Plaintiff's Decl., Exhibit 2 to Plaintiff's Motion to Remand,
Docket Entry No. 9-2, p. 2 ¶ 2.

"'a connection to [the] vessel . . . that [was] substantial in terms of both its duration and its nature,'" he has properly pleaded that he was a Jones Act seaman at the time of his injury. Papai, 117 S. Ct. at 1540.  Plaintiff's claim under the Jones Act is by definition outside the court's subject matter jurisdiction and therefore must be remanded.

## C.  Whether Plaintiff's Jones Act Claim Must Be Severed

Plaintiff states that he brings "a single Jones Act action against Halliburton for negligence and maintenance and cure — quintessential Jones Act claims."[33]  But maintenance and cure is a separate claim that does not arise under the Jones Act.  See Atlantic Sounding Co., Inc. v. Townsend, 129 S. Ct. 2561, 2570 (2009) ("The Jones Act thus created a statutory cause of action for negligence, but it did not eliminate pre-existing remedies available to seamen for the separate common-law cause of action based on a seaman's right to maintenance and cure.").

Defendant argues that if the court concludes that Plaintiff has alleged a valid Jones Act claim, the court must sever the two claims and only remand the Jones Act claim.  Defendant cites 28 U.S.C. § 1441(c), which states:

> (1)  If a civil action includes--
>
>> (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

---

[33]Plaintiff's Motion to Remand, Docket Entry No. 9, p. 20.

-20-

> (B) . . . a claim that has been made
> nonremovable by statute,
>
> the entire action may be removed if the action
> would be removable without the inclusion of the
> claim described in subparagraph (B).
>
> (2) Upon removal . . . the district court shall
> sever from the action all [nonremovable] claims
> . . . and shall remand the severed claims . . .

28 U.S.C. § 1441(c). Plaintiff's maintenance and cure claim does not arise under the Constitution, laws, or treaties of the United States; it is a general maritime claim. See Whittaker v. Vane Line Bunkering, Inc., No. 1:18-CV-00539 (MAD/DJS), 2018 WL 6179425, at *3 (N.D.N.Y. Nov. 27, 2018) ("General maritime claims, such as claims for maintenance and cure, do not present federal questions for purposes of Section 1331."). Section 1441(c), by its terms, therefore does not apply. Although the court has OCSLA jurisdiction over Plaintiff's claim, § 1441(c) does not authorize Defendant to remove an action alleging both a general maritime claim and a nonremovable Jones Act claim. For the same reason, § 1441(c) does not authorize the court to sever Plaintiff's claims. The court is not aware of any analogous provision allowing removal of actions containing both general maritime claims and nonremovable claims. Plaintiff's entire action will therefore be remanded.

## IV.   Conclusion and Order

The court concludes that Plaintiff's Jones Act claim is not fraudulently pleaded, and his Jones Act claim is not removable under 28 U.S.C. § 1445(a). The court has OCSLA subject matter

jurisdiction over Plaintiff's claim for maintenance and cure under 43 U.S.C. § 1349(b)(1).  Nevertheless, § 1441(c) does not authorize removal or severance of an action containing a Jones Act claim and a general maritime claim.  Plaintiff's Motion to Remand (Docket Entry No. 9) is therefore **GRANTED**.  This action is **REMANDED** to the 164th Judicial District Court of Harris County, Texas.[34]

The Clerk will provide a copy of this Memorandum Opinion and Order to the District Clerk of Harris County, Texas.

**SIGNED** at Houston, Texas, on this the 5th day of March, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[34]Because the action was improperly removed, Defendant's Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(7) and 12(b)(3) and Alternative Motion to Transfer or Stay (Docket Entry No. 5) is **DENIED AS MOOT**.

-22-